UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HOLLY LYNNE BUCKMASTER, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Case No. 1:18-cv-135-CHS ) |
| ANDREW SAUL,<br>Commissioner of Social Security | ) ) ) ) |
| *Defendant*. | ) |

## **MEMORANDUM OPINION**

**I.    Introduction**

This action was timely instituted pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's final decision denying Holly Lynne Buckmaster's ("Plaintiff") claim for disability insurance benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff seeks benefits on the basis of major motor seizures, borderline intellectual functioning, organic mental disorders, and migraines. [Doc. 15, Pl.'s br. at 1]. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 13].

Defendant's Motion for Summary Judgment [Doc. 16] and Plaintiff's Motion for Summary Judgment [Doc. 14] are pending. Plaintiff seeks remand of her claim for further administrative proceedings on two alleged bases: (1) the administrative law judge ("ALJ") did not include her limitations caused by migraines in his assessment of her residual functional capacity ("RFC"); and (2) the ALJ failed to follow the treating physician rule when he gave "little weight" to her neurologist's opinion that work would increase the frequency of her migraines and she was disabled by migraines.

For the reasons stated herein, the Court will **DENY** the Commissioner's motion, **GRANT** Plaintiff's motion, and **REMAND** for further administrative proceedings consistent with this opinion.

## II. Background

### A. Procedural History

On December 9, 2014, Plaintiff filed a claim for DIB alleging she had been disabled since August 27, 2014. [Tr. 15]. Her claim was denied initially and upon reconsideration. She requested a hearing, which was held before ALJ Wesley R. Kliner on May 17, 2017. [Tr. 15]. The ALJ denied Plaintiff's claim on October 6, 2017. On April 21, 2018, the Appeals Council denied Plaintiff's request for a review. [Tr. 1-4]. Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

### B. The ALJ's Findings

The ALJ made the following findings which are relevant to this review:

1. Plaintiff meets the insured status of the Social Security Act through December 31, 2018. [Tr. 17].

2. Plaintiff has severe impairments of major motor seizures, borderline intellectual functioning, organic mental disorders, and migraines. [Id.].

3. Plaintiff does not meet one of the listed impairments for disability found in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 18].

4. The Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes or scaffolds; should never work at unprotected heights; should never work around exposed, dangerous moving mechanical parts; and could never operate a motor vehicle. The claimant should be limited to performing simple, routine tasks and making simple work-related decisions as a result of neurologic issues. She might be off task less than five percent of the workday over and above the normal breaks given in an eight-hour workday." [Tr. 20].

5. As of the alleged onset date of disability, Plaintiff was 39 years old which is defined as a younger individual age 18-49. She has limited education, and no transferable skills. [Tr. 24].

6. Given Plaintiff's age, education, work experience, and her RFC, there exist jobs in significant numbers in the national economy jobs that Plaintiff can perform. These jobs include cashier, survey worker and packing line worker. [Tr. 24-5].

C. Facts

Plaintiff does not take issue with the manner in which the ALJ incorporated into her RFC her limitations cause by seizures, borderline intellectual functioning, and organic mental disorders. Her seizures have been well controlled by medication for many years, and the ALJ found Plaintiff should never work at unprotected heights; should never work around exposed, dangerous moving mechanical parts; and could never operate a motor vehicle. The ALJ also limited Plaintiff to performing simple, routine tasks and making simple work-related decisions because of her intellectual and mental impairments.

On the other hand, Plaintiff asserts the ALJ failed to incorporate into her RFC those limitations caused by migraine headaches. She also contends that the ALJ—by failing to give controlling weight to her neurologist's opinion that work will exacerbate her migraines and that she is disabled by migraines—violated the treating physician rule. Because migraines are the sole severe impairment at issue in this appeal, this factual review will focus only on the evidence related to her migraines.

From May 2010 to September 2014, Plaintiff saw her primary care physician ("PCP"), Dr. Black, fifteen times for migraine headaches. [Tr. 397-98, 390, 387, 384, 382, 379, 374, 365-66, 360, 357, 355, 350, 340, 330-33]. She reported migraines with an aura, nausea, vomiting, phonophobia, and photophobia. [Id.]. During at least part of this period, she reported she had migraine headaches about once a week. [Tr. 374]. Her migraines lasted one to three days; they

would improve with Imitrex. On September 5, 2014, she returned to Dr. Black with a migraine lasting five days, and she reported an increased frequency in migraine headaches. [Tr. 330-31]. She requested and was given a referral to a neurologist, Dr. Larry Gibson. [Id.].

On October 3, 2014, Plaintiff presented to Dr. Gibson for a neurological evaluation. She complained of escalating headaches and migraines, stating that they were incapacitating and that she had missed many work days because of them. She reported she had been placed on leave from work due to her absences caused by migraines. [Tr. 284]. She described her migraines as severe, posterior to generalized in location, and associated with blurred vision, dizziness, nausea and vomiting; and she needed to be assisted in walking when experiencing a migraine. [Id.]. She reported taking Imitrex, which did not always provide relief, and undergoing chiropractic treatment. [Id.]. Dr. Gibson increased her Topamax dosage and recommended that she "manage stress, and triggers as able." [Tr. 285]. He opined that "[g]iven the frequency of her headaches I would agree she is not able to maintain working." [Id.]. During follow up with Dr. Gibson on December 5, 2014, Plaintiff reported having good and bad days, but that she "fe[lt] better overall being able to manage her day without the pressure or stress of trying to maintain a work day." [Tr. 286]. She "still gets migraines and has to take medication and lie down." [Tr. 286-87]. On the review of systems, she was also noted to have blurred vision, dizziness, nausea and vomiting. [Tr. 287]. Dr. Gibson continued her medications. [Tr. 287-88]. He "[a]greed that the pressure of trying to maintain employment would exacerbate her migraines and seizures and feel disability reasonable." [Tr. 288].

On March 17, 2015, Dr. Black stated he had received paperwork from Lincoln Financial regarding a claim for long-term disability benefits due to migraines and that Plaintiff had not mentioned to him that she was seeking disability due to migraines. [Tr. 320]. He also noted that

the paperwork "ask[ed] very specific questions on limitations" and, as Dr. Gibson was managing her migraines, he deferred the completion of the paperwork to Dr. Gibson. [Tr. 320-22].

On May 22, 2015, Plaintiff reported to Dr. Gibson that she "continues to have migraines on a regular basis and admits to some personal stress." She was still on leave from work. [Tr. 289]. Dr. Gibson noted that Plaintiff "has a service dog that recognizes her migraines and seizures." [Id.]. Dr. Gibson continued her medications and advised her to "manage stress as able." [Tr. 291]. He opined that she "[r]emains unable to maintain gainful employment." [Id.]

On December 11, 2015, Plaintiff followed up with her neurologist, Dr. Gibson. Her husband reported increased problems with frequent, severe headaches and sleeping a lot. Her migraines were lasting two to three days at a time. [Tr. 451]. She admitted to dizziness, blurred vision, nausea and vomiting. [Tr. 451-452]. Dr. Gibson directed that Plaintiff was to take two Imitrex and an Advil at the same time when experiencing a migraine. He also advised that she should "[m]anage stress as able" and "remains unable to maintain gainful employment." [Tr. 452].

On December 18, 2015, she followed up with Dr. Black. He advised that she "has got to find a way to destress." [Tr. 464]. During follow up with Dr. Black on January 8, 2016, Plaintiff reported experiencing a migraine nearly every day; she reported that each migraine lasted less than one day. [Tr. 465]. Dr. Black noted she was compliant with her treatment. [Id.].

During follow up with Dr. Gibson on March 11, 2016, Plaintiff described having four migraines since her last visit to him on December 11, 2015. She admitted to some personal stress. [Tr. 454]. Her medications were continued and she was advised to "monitor headaches and seizures, maintain precautions, [and] manage stress as able." [Tr. 455]. On September 16, 2016, Plaintiff reported that she and her husband had been to various cities for her husband's work; she again described four migraines triggered by stress. [Tr. 457]. The Court takes her report to mean

that she has had four migraines in the past six months since her last visit with Dr. Gibson on March 11, 2016. Her medications of Imitrex, Tegretol, and Depakene were continued. [Id.]. Dr. Gibson advised Plaintiff to "[m]aintain activity with precautions [and] manage stress as able." [Tr. 458].

On September 16, 2016, Plaintiff described to Dr. Black that a migraine episode lasts one to three days and is associated with a throbbing and pounding pain and nausea, phonophobia, photophobia, and difficulty sleeping. [Tr. 468]. She reported her migraines are exacerbated by bright lights and loud noises. She stated that that the migraine frequency had increased recently. [*Id.*].

## III. Analysis

### A. The Effect of Plaintiff's Migraines on Her RFC

Plaintiff asserts that the ALJ did not address the effect of her migraines on her ability to engage in substantial gainful employment. The government disagrees contending that "[t]he ALJ's RFC finding accommodated Plaintiff's migraines by limiting her to a range of light, unskilled work." [Gov't's brief at 11, Doc. 17]. However, Plaintiff's objection is not to the physical level of work the ALJ found she could perform when not experiencing a migraine, *to wit*, light work. Rather, her contention is that the ALJ's RFC does not address the anticipated frequency of Plaintiff's migraines, their duration, and their effect on her ability to work *while they are occurring*. The ALJ did include in the RFC the limitation that "[s]he might be off task less than five percent of the workday over and above the normal breaks given in an eight-hour workday," but, as Plaintiff notes, "this limitation means that Plaintiff has *no more than 21 minutes* to recover from a migraine in the workplace and then remain on task for the remainder of the workday." [Doc. 15, Pl.'s br. at 11]. As the Commissioner has observed, at her best, she had four migraines during a six month period—from March 11, 2016, to September 16, 2016, when she was not working. According to

medical records and Plaintiff's reports, her migraines last one to three days during which she is incapacitated by the symptoms and the medications she takes to address them. The RFC the ALJ has assigned to Plaintiff, however, seems to contemplate no absences caused by migraines. If the ALJ is taking the position that she will not have any more migraines, or that she can work through her migraines, or that she will have them so infrequently that absences caused by them will not affect her ability to engage in substantial gainful employment, the ALJ needs to explicitly say so and support his conclusion with substantial evidence. As it stands, the current RFC is not supported by substantial evidence.

### B. The Treating Physician Rule

Plaintiff asserts that the ALJ failed to follow the treating physician rule when he failed to give controlling weight to Dr. Gibson's opinions that: (1) work would exacerbate the frequency of her migraines; and (2) she cannot work because of her migraines. The Commissioner states that Dr. Gibson was not a treating physician because, when he stated Plaintiff was disabled by migraines after her first visit in October 2016, he did not have an ongoing treatment relationship with the Plaintiff. This argument ignores the six additional visits Plaintiff had with Dr. Gibson for the treatment of migraines from December 2014 to September 2016. During these visits, Dr. Gibson prescribed medication for the treatment of migraines and, on every occasion, he opined she should reduce stress to reduce the frequency of her migraines. Further, on December 11, 2015, after her fourth visit, Dr. Gibson stated that Plaintiff "remains unable to maintain gainful employment" due to migraines. [Tr. 452].

Social Security regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment

relationship with [the claimant]" "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1502 (in effect June 13, 2011 to March 26, 2017); *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Pursuant to § 404.1502, "an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) [may] be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)." Based on Dr. Gibson's record of treatment of Plaintiff for migraine headaches between October 2014 to September 2016, the Court concludes he is a treating physician.

If a medical source is considered a treating physician, an ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2))[1]; *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the ALJ does not give the treating physician's opinion controlling weight, then, pursuant to the SSA's own regulations, the ALJ must give good reasons for not doing so and must still evaluate the amount of weight to give the treating physician's opinion based on a number of factors. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-45 (6th Cir. 2004), *see also* 20 C.F.R. § 404.1527. The Sixth Circuit discussed these factors in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541(6th Cir. 2004):

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the

---

[1] The Social Security Administration revised its rules regarding the evaluation of medical evidence. 82 Fed. Reg. 5844-01, 2017 WL 168819. The revised regulations went into effect on March 27, 2017, *id*., and are not applicable to this case. *See Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec*., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Id*. [20 C.F.R. § 404.1527(d)(2)].

*Wilson*, 378 F.3d at 544 (citing the factors enumerated in 20 C.F.R. § 404.1527(d)(2)).[2] While an ALJ may decide not to give a treating physician controlling weight, a rebuttal presumption remains that the opinion of the treating physician is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* at 243.

The ALJ stated he gave Dr. Gibson's opinions "little weight" finding they were not consistent with the evidence as a whole. The ALJ noted as significant that Plaintiff was seeing Dr. Gibson only every few months "which suggests that claimant's medications worked to reduce the amount of migraines the claimant was having." [Tr. 21]. The ALJ also noted that, in March of 2017, Dr. Black, Plaintiff's PCP, was unaware the Plaintiff had applied for disability due to migraines, a fact which the ALJ found was "somewhat inconsistent with the evidence that the claimant has disabling migraines but does not regularly discuss them with her treating physician." [*Id*.]. The ALJ also found significant that, even though Plaintiff stated her migraines are worse during stress or when her normal routine is interrupted, by September 2016, she was traveling to various cities with her husband for work "which suggest that the claimant's migraines did not preclude her from participating in activities that might cause stress." [Tr. 22]. Finally, the ALJ

---

[2] The SSA's rules concerning treating physicians were found at 20 C.F.R. § 404.1527(**d**) until 2012 when § 404.1527 was reorganized to move the regulations regarding treating physicians from § 404.1527(d) to § 404.1527(**c**); however, the substance of those regulations remained the same and are still in effect for all claims filed before March 27, 2017. *See supra* note 1 and accompanying text.

correctly stated that, the decision on the ultimate issue of disability, for purposes of DIB under the Social Security Act, is a matter for the Commissioner, not a physician. [Tr. 23]. *Garner v. Heckler*, 745 F.2d 383, 392 (6th Cir. 1984); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 727 (6th Cir. 2014) ("A doctor's conclusion that a patient is disabled from all work may be considered as well but could "never be entitled to controlling weight or given special significance" because it may invade the ultimate disability issue reserved to the Commissioner.")

Thus, the ALJ offered reasons why he did not accept Dr. Gibson's assessment of the *frequency* of her migraines, but the RFC he assigned to Plaintiff doesn't appear to give Dr. Gibson's opinion *any* weight. Dr. Gibson was clear that Plaintiff has migraines and when she is having a migraine, she is experiencing symptoms which would seem to preclude work: throbbing pain, dizziness, nausea, vomiting, blurred vision. But the ALJ's RFC does not contemplate that Plaintiff will have any absences at all from work due to migraines. Moreover, as previously discussed, the ALJ did not explicitly address whether he concluded Plaintiff would or would not have any migraines and, if she does, whether those migraines would cause her to be absent from work while she was having them. Accordingly, the Court finds the ALJ's decision to, in effect, give *no* weight to Dr. Gibson's opinions is not supported by substantial evidence. This matter will be remanded for a thorough review of the migraines' frequency, duration, and effect on Plaintiff's ability to be present at work. Upon remand, the Commissioner may choose to submit Plaintiff's medical records to a specialist in treating migraines to address these issues.

## IV.     Conclusion

For the reasons stated in this Memorandum Opinion, the Court will **GRANT** Plaintiff's Motion for Summary Judgment [Doc. 14] and **DENY** the Commissioner's Motion for Summary Judgment [Doc. 16]. Further, the Court will **REMAND** this matter pursuant to Sentence Four of

42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion.

An appropriate order shall enter.

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE